UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

BRANDY DENISE SMITH                )
                                   )
V.                                 )          NO. 2:11-CV-109
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security    )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of

the Court and 28 U.S.C. § 636 for a report and recommendation.  Her applications for

Supplemental Security Income and Disability Insurance Benefits were denied following a

hearing before an Administrative Law Judge.   Both the plaintiff and the defendant

Commissioner have filed dispositive Motions [Docs. 9 and 21].

The sole function of this Court in making this review is to determine whether the

findings of the Secretary are supported by substantial evidence in the record. *McCormick v.*

*Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988).  "Substantial

evidence" is defined as evidence that a reasonable mind might accept as adequate to support

the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971).  It must be enough

to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought

to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607

(1966).  The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor

decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  Even

if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 30 years of age with a high school education at the time of the adjudication. She was found not capable of returning to her past relevant work. She alleged disability beginning on January 1, 2006, due to back pain, a left shoulder problem, an anxiety disorder and depression.

Plaintiff's medical history is adequately summarized in her counsel's brief as follows:

Plaintiff received treatment at Rogersville Medical Center from May 1, 2000 through May 29, 2001. Treatment was rendered for panic attacks/anxiety, gastroesophageal reflux disease [hereinafter "GERD"], chronic low back pain, nausea, chest pain, gastroenteritis, facial numbness, social anxiety disorder, upper respiratory infection, diarrhea, dental pain, and sinusitis (Tr. 153-174).

Plaintiff received treatment at Hawkins County Mental Health from May 4, 2000 through December 4, 2001, during which time she carried the diagnosis of panic disorder with agoraphobia, with a global assessment of functioning [hereinafter "GAF"] ranging from 50-55 (Tr. 175-185). Plaintiff received treatment at Hawkins County Memorial Hospital on nine occasions from January 3, 2000 through March 27, 2001, due to bronchitis, panic disorder, adverse reaction to Paxil, low back pain, tonsillitis, and toothache (Tr. 186-195, 235-258).

Plaintiff underwent consultative exam by Dr. Karl W. Konrad on March 18, 2002. Presenting complaints included worsening back pain radiating into the lower extremities, panic attacks, and acid reflux. Dr. Konrad did not offer a diagnosis (Tr. 213-215).

On March 18, 2002, Plaintiff underwent consultative exam by Kathy Jo. Miller, M.Ed. and Robert S. Spangler, Ed.D. Presenting problems included panic disorder, back pain, and acid reflux disease. WAIS-III testing yielded a Verbal IQ score of 92, a Performance IQ score of 89, and a Full Scale IQ score of 90. In summary, the examiners noted a history of panic disorder as evidenced by shortness of breath, anxiety, and feeling as if she is going to pass out; at one point, she would become nauseous and throw up; and tried on several different medications but has gained benefit from Paxil. The diagnosis was panic disorder, mild, under partial pharmacological control. The examiners opined Plaintiff's social interaction and adaptation were mildly limited (Tr. 216-219).

Plaintiff received treatment at Health Star Physicians from March 1, 2002 through November 27, 2002. Problems noted during this time include GERD, chronic low back

2

pain, obesity, anxiety attacks, and upper respiratory infection (Tr. 259-267). Plaintiff continued treatment at Frontier Health/Hawkins County Mental Health from March 27, 2002 through December 25, 2002. Conditions and complaints addressed during this time include panic attacks, sadness, low energy, poor memory and concentration, difficulty comprehending things, irritability, suicidal ideations, auditory and visual hallucinations, paranoia, depression, blackout spells, bipolar disorder, disassociative disorder, and borderline personality disorder (Tr. 268-274).

On August 21, 2002, Plaintiff was brought to Hawkins County Memorial Hospital by EMS with self-inflicted cuts on her forearm. It was noted that Plaintiff was depressed and trying to kill herself. Plaintiff was transferred to a mental health facility with the diagnoses of superficial lacerations and major depression (Tr. 275-277). Upon transfer, Plaintiff was admitted to Indian Path Pavilion from August 21, 2002 through September 3, 2002, due to self-mutilation, blackout spells, suicidal ideation, and auditory hallucinations. The discharge diagnoses were bipolar I (depressed), panic disorder, major depressive disorder, dissociative disorder, and borderline personality disorder (Tr. 280-284).

Plaintiff underwent consultative exam by Dr. Steven Lawhon on March 28, 2003. It is unclear if the report actually pertains to Plaintiff, as it lists her as a male throughout the report and notes an incorrect date of birth, although it does note Plaintiff's Social Security number. In summary, Dr. Lawhon noted Plaintiff appears to be mildly to moderately depressed as evidenced by her affect, mood, and sel-report, and she reports having psychotic symptoms including auditory hallucinations. The diagnosis was major depression, recurrent with psychotic features (Tr. 285-288).

Plaintiff underwent consultative exam by Dr. Samuel D. Breeding on April 3, 2003. Presenting problems included anxiety, depression, nervousness, difficulty being around people, panic attacks, and worsening low back pain. Exam was remarkable for decreased lumbar range of motion and the diagnoses were anxiety/depression and chronic low back pain. Dr. Breeding opined Plaintiff can lift 35 pounds occasionally; can sit for six to eight hours in an eight-hour day; and can stand for six to eight hours in an eight-hour day (Tr. 289-291).

Plaintiff returned to Hawkins County Memorial Hospital on February 7, 2005, for treatment of chronic low back pain radiating into the left leg (Tr. 316-320). Plaintiff was seen at Hawkins County Memorial Hospital eight times from April 9, 2005 through September 17, 2005. Treatment was rendered for rash secondary to medication reaction, left heel laceration, left forearm laceration, right leg laceration, neck and forehead pain following a fall, chest wall pain, and left wrist contusion (Tr. 338-383).

Plaintiff continued treatment at Frontier Health from March 10, 2005 through January 10, 2008, during which time she carried the diagnosis of panic disorder with agoraphobia. Problems noted during treatment include depression, sadness, anxiety, social isolation, paranoia, crying spells, poor energy, difficulty with motivation, mood swings, weight gain, low self-esteem, temper problems, difficulty sleeping, panic attacks, self-mutilation with cutting, loss of sexual desire, constant worry, irritability, poor concentration, and lack of insight and judgment (Tr. 321-337).

Plaintiff received treatment at Rural Health Services from September 20, 2005 through April 2, 2007. Conditions and complaints addressed include left wrist tendonitis, dental pain, social anxiety, depression, bronchitis, muscle spasms, limited lumbar range

of motion, GERD, and chronic low back pain radiating into the legs secondary to bulging disc (Tr. 384-403). On December 18, 2006, lumbar spine x-rays showed degenerative facet change of the lower lumbar spine (Tr. 400). On January 6, 2007, MRI of the lumbar spine revealed a small L4-5 disc herniation slightly eccentric to the left and abutting the left L5 root (Tr. 398-399).

Plaintiff was seen at Hawkins County Memorial Hospital on ten occasions from November 26, 2005 through January 31, 2007, due to TMJ pain, urinary tract infection, bronchitis, upper respiratory infections, exacerbations of chronic low back pain, left forearm laceration, strep throat, second degree sunburn, allergic rhinitis with cough, left upper arm laceration with surrounding cellulitis, and urinary tract infection (Tr. 404-502).

On February 28, 2007, a reviewing state agency psychologist opined Plaintiff is markedly limited in her ability to interact appropriately with the general public and moderately limited in her ability to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (Tr. 504-521).

Dr. Ranjan Sachdev examined Plaintiff on March 2, 2007, upon referral by Dr. Alder for evaluation of back pain. Review of systems was positive for weight gain, planned weight loss, fatigue, shortness of breath, wheezing, diarrhea, heartburn, weakness, depression, anxiety, and frequent urination. Exam was remarkable for bilateral tenderness of posterior elements of the lumbosacral spine. MRI was reviewed and noted to show small disc herniation to the left at L4-5. The impression was back pain secondary to small disc herniation L4-5 without nerve compression (Tr. 522-525).

On May 1, 2007, a reviewing state agency physician opined Plaintiff has no medically determinable physical impairment. Dr. Millis mentions review of only an Emergency Room visit dated February 14, 2006 in reaching his conclusions and it appears he was only considering the time period of January 1, 2006 through March 31, 2006 (Tr. 526-529).

Plaintiff received treatment at Pinecrest Pain Management from May 2, 2007 through March 11, 2008 (Tr. 530-567). Plaintiff first presented with a ten year history of lower back pain with radiation to the buttock, down the front of the legs to the knees, and down the back of the legs to the ankles. Review of systems was positive for back pain, tingling/burning/numbness in the lower extremities, and frequent anxiousness/stress. Exam was remarkable for decreased lumbar range of motion with tenderness to palpation over the posterior elements with marked exacerbation to extension and rotation; paralumbar muscular spasms; and point tenderness in both sacroiliac joints. The diagnoses were generalized anxiety disorder, nondependent tobacco use disorder, degeneration of lumbar or lumbosacral intervertebral disc, displacement of lumbar intervertebral disc without myelopathy, lumbosacral spondylosis without myelopathy, lumbago, and sacroiliitis (Tr. 551-554). During follow-up, Plaintiff received epidural steroid injections and carried the diagnoses of lumbar spondylosis, degenerative disc disease of the lumbar spine, left shoulder pain secondary to separated AC joint, intractable pain, cervalgia, and SI disease. Exams were consistently remarkable for

4

tenderness and decreased range of motion of the lumbar spine, decreased range of motion in the cervical spine, and tenderness and decreased range of motion of the left shoulder (Tr. 530-550).

Plaintiff underwent consultative exam by Dr. Samuel Breeding on September 18, 2008. Presenting problems included social anxiety and low back pain radiating down the left leg and exam was remarkable for decreased lumbar range of motion. The diagnoses were social anxiety and chronic low back pain. Dr. Breeding noted that he did not have any of Plaintiff's records to review pertaining to her back pain, but it would appear that she can lift at least 30 pounds occasionally, can sit for four to six hours in an eight-hour day, can stand for four to six hours in an eight-hour day, and may have difficulty with repetitive bending (Tr. 568-571).

On April 9, 2008, a reviewing state agency physician opined that, through her date last insured of March 2006, Plaintiff could lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; could stand/walk for a total of about six hours in an eight-hour workday; and could sit for a total of about six hours in an eight-hour workday (Tr. 572-577). It should be noted that Plaintiff's correct date last insured is September 2008 (Tr. 81).

On July 25, 2008, a reviewing state agency psychologist opined that, through her date last insured of March 2006, Plaintiff did not have a severe mental impairment(s) (Tr. 582-595). Again, it should be noted that Plaintiff's correct date last insured is September 2008 (Tr. 81). In his current evaluation, Dr. Thompson opined Plaintiff is markedly limited in her ability to interact appropriately with the general public and moderately limited in her ability to maintain attention and concentration for extended periods; to respond appropriately to changes in the work setting; and to travel in unfamiliar places (Tr. 578-581, 596-609).

Plaintiff continued treatment at Rural Health Services from June 12, 2007 through June 12, 2008, due to GERD, chronic low back pain, depression, anxiety, and constipation (Tr. 610-622). On January 2, 2008, cervical spine x-rays showed mild loss of intervertebral disc space height at C6-7 (Tr. 617). Plaintiff continued treatment at Frontier Health from October 20, 2008 through February 6, 2009, during which time she carried the diagnosis of panic disorder with agoraphobia and was having three to four panic attacks per day, noted to be worse when in groups of people (Tr. 624-626).

Plaintiff continued treatment at Pinecrest Pain Management from March 25, 2008 through March 5, 2009, due to lumbar spondylosis, degenerative disc disease of the lumbar spine, left shoulder pain, intractable back pain, and SI disease. Exams were remarkable for decreased range of motion and tenderness of the lumbar spine, antalgic gait, tenderness over the left shoulder, and tenderness over the SI joints bilaterally (Tr. 627-657).

Plaintiff received treatment at Hawkins County Memorial Hospital on seven occasions from August 9, 2207 through March 15, 2009, due to shoulder pain, bronchitis, upper respiratory infection, pharyngitis, urinary tract infection, left lower extremity abscess/cellulitis, and right axilla cellulitis (Tr. 658-685).

On October 14, 2008, Plaintiff was determined to be incapacitated by the Tennessee Department of Human Services, due to the diagnoses of lumbar spondylosis and degenerative disc disease of the lumbar spine (Tr. 686).

5

[Doc. 10, pgs. 2-8]

At the administrative hearing, the ALJ took the testimony of Dr. Robert Spangler, a Vocational Expert ["VE"].  After asking about the vocational requirements of plaintiff's past relevant work, he asked the VE to assume a person of plaintiff's "height, weight, education, and work background and ask you to assume that she has (the) residual functional capacity for light work activity.  And also to assume that she has an emotional disorder with restrictions regarding her ability to perform work related activities that would prevent her from dealing with the public."  When asked if there were jobs, the VE identified 10,483,000 in the nation and 199,000 in the region in the full range, but "with the limitations on those other things you said, about 30 percent."  While the Court is not exactly sure if the VE means 30% removed from the total number or 30% of the total number, either would reflect a significant number of jobs.  (Tr. 815-16).

The VE was then asked some questions by plaintiff's counsel regarding how many absences would be tolerated and the like.  He was then asked "if the emotional limitations are consistent with Exhibit 40F (the evaluation by Dr. O'Bryan at 503-06), would any of these jobs be available?"  The VE answered "no."  (Tr. 816).  He was then asked "if they're consistent with Exhibit 47F (the evaluation of Dr. Thompson at 578-80), would any of these jobs be available?"  Again he answered "no."  (Tr. 817).  The ALJ did not ask any further questions of the VE and the hearing ended.

In his hearing decision, the ALJ found that the plaintiff had severe impairments of back pain, anxiety disorders and depression.  (Tr. 23).  He then discussed various pieces of medical evidence such as the January, 2007 MRI which showed L4-5 herniation, the exam

6

report of Dr. Sachdev, and the 2007 consultative exam by Dr. Breeding.  He then discussed her treatment records from Frontier Health regarding her mental impairments.  (Tr. 23-24).  He found that she did not have a severe impairment of the left shoulder, relying up the exam of Dr. Breeding.  (Tr. 25).  He found "that the claimant's anxiety disorder and depression results in no more than mild restrictions in activities in daily living and sustaining concentration, persistence, or pace; and a moderate limitation in maintaining social functioning.  There are no episodes of decompensation."  (Tr. 25).

The ALJ then stated "the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work..." (Tr. 25).  He then evaluated the plaintiff's credibility.  He noted her daily activities of shopping, watching TV, playing with her son, preparing meals, playing cards, visiting with family and friends, doing laundry and housekeeping.  He noted that she told Frontier Health that she had been fired from her job after being accused of stealing money, and that she was having trouble finding a new job because of negative references from that employer.  He stated that she "has not received the type of medical treatment one would expect for a totally disabled individual..." instead, receiving conservative treatment, and having no restrictions placed upon her in the notes of treating sources.  He then found her to be not credible in her subjective complaints to the extent it differed from his findings.  He then stated that he "notes the findings of the State Agency and finds these opinions are consistent with the finding that the claimant is not disabled and..that these findings are not inconsistent with the findings of the Administrative Law Judge."  (Tr. 26).

He then found that she cannot return to her past relevant work.  Based upon her age,

education, and vocational history he found that she has transferrable work skills to"to other occupations with jobs existing in significant numbers in the national economy." (Tr. 26). He then stated that "the vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity to perform at the light extertional level with an emotional disorder with the limitation in the claimant's ability to deal with the public." When asked this, the VE identified a substantial number of jobs "less 30 percent due to the limitation in ability to deal with the public." Accordingly, he found that the plaintiff was not disabled. (Tr. 27).

The plaintiff first asserts that the ALJ erred in failing to include any effects of her severe mental impairments in his RFC finding stated in his hearing decision. However, the ALJ clearly did include the restriction of being limited in the ability to deal with the public both in his question to the VE at the hearing and in his recounting of that question in his hearing decision. There is no doubt in the Court's mind that he found the plaintiff capable of light work limited only by a limitation in her ability to deal with the public.

The plaintiff also argues that the ALJ did not follow the regulations by making the findings in his decision of plaintiff's level of function in activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation. As stated above, the ALJ did make those findings. (Tr. 25).

Plaintiff also asserts that the ALJ erred in not finding a severe impairment based upon her complaints of left shoulder pain, pointing out that there was evidence of treatment for that condition. However, the ALJ did state that Dr. Breeding noted no such problem in his

8

consultative exam and based his finding primarily on that. Once again, Dr. Breeding's opinion is arguably substantial evidence on this issue.

However, there is a fundamental problem pointed out by the plaintiff which does raise a substantial issue. Dr. Spangler, the VE, unequivocally stated that if the plaintiff had the limitations opined by Dr. O'Bryan (Exh. 40F) or Dr. Thompson (Exh. 47F), *there would be no jobs which the plaintiff could perform.* The Commissioner argues that a combination of the findings of these two State Agency reviewers is consistent with the ALJ's findings in both the four areas of functioning and his RFC limitation regarding plaintiff working with the public. But that consistency is not the issue. Substantial portions of the findings of those doctors is consistent with the ALJ. However, Dr. Spangler did not hesitate in finding that if she had their opined limitations she could not work.

If there was a statement from another source, other than the 2003 assessment by Dr. Lawhon, which took into account her treatment history from Frontier Health and opined that she had only a limitation in working with the public, then this would not be a serious concern. But there is no such other evidence. The evaluations of Drs. O'Bryan and Thompson constitute the least restrictive findings, and the VE said she could not find work with those limitations.

The Court frankly finds Dr. Spangler's statement incredible, and its significance apparently was not understood by the ALJ at the hearing, when he could have fleshed it out, or when he wrote the hearing decision. In dozens of other cases, very similar limitations have elicited answers from VE's indicating a substantial number of jobs. But the answer of Dr. Spangler here robs the ALJ's decision of substantial evidence, and causes the

9

Commissioner's position to lack substantial justification.

The Court does not believe there is overwhelming evidence that the plaintiff is disabled by her mental impairment. However, further development is necessary in that regard, including a new hearing, again with utilization of a vocational expert. It is therefore respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 9] be GRANTED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 21] be DENIED.[1]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

_____

[1]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

10